## National Surety Company v. Taylor's Guardian.

(Decided October 30, 1923.)

### Appeal from Knox Circuit Court.

1. Guardian and Ward—Funds May be Invested in Real Estate.—
   Under Ky. Stats, section 4706, guardian of an infant may, with
   the direction of the circuit court, invest the funds of his ward in
   real estate, where it appears to be a safe investment or reason-
   ably necessary for his maintenance.

2. Guardian and Ward—Evidence Held to Show Expenditures for
   Land Not Proper Investment.—In an action against a guardian's
   surety, evidence held to show that expenditure by guardian for
   land without direction of the court was not a reasonably safe and
   prudent investment.

3. Guardian and Ward—Presumptions on Collateral Attack of Judg-
   ment in Suit to Surcharge Settlement.—In a collateral attack by
   surety, on judgment rendered in suit to surcharge guardian's set-
   tlement, every presumption will be indulged to uphold the validity
   of the judgment, and the pleading will be construed most strongly
   against the pleader.

4. Judgment—Attack Collaterally Only When Void.—Collateral at-
   tack cannot be made upon erroneous judgment, but can only be
   made upon a void judgment.

5. Guardian and Ward—Judgment in Suit to Surcharge Guardian's
   Settlement Not too Indefinite.—A judgment in a suit to surcharge
   a guardian's settlement was not so indefinite as to render it un-
   enforceable, where it adjudged the specific sum received by him
   and the date from which it should begin to bear interest and the
   rate, and set out the various sums used and loaned by him, giving
   date, amount, and rate of interest chargeable thereon, itemized
   various credits allowed, giving dates and amounts, including the
   proceeds of the real estate and house furnishings received by the
   ward at her marriage, and provided for this to be computed bi-
   ennially up to a certain date.

DISHMAN, TINSLEY & DISHMAN for appellant.

BLACK, BLACK & OWENS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirm-
ing.

T. G. Cole, as administrator of the estate of his de-
ceased son, collected a judgment amounting to over
$24,000.00. One-half of this was paid to his attorneys.
In a settlement of his accounts he was allowed something
over $5,000.00 in fees and commissions, and for his ser-
vices ordinary and extraordinary.

The deceased was survived by one child, Laura Cole, an infant then living with T. G. Cole, who at the time was a widower. In March, 1915, he qualified as her guardian, and reported $6,807.44 received by him as such guardian. Shortly afterward he married a second wife, and his ward remained with him until her marriage to H. L. Taylor in 1917, she being then 15 years of age.

T. G. Cole made a settlement of his accounts as such guardian with the Knox county court in March, 1917. The ward and her husband, as next friend, filed exceptions thereto, and on her motion J. M. Cole was appointed her guardian instead of T. G. Cole, and while those exceptions were pending he brought suit in the circuit court to surcharge that settlement. The former guardian's surety was made a defendant, but the suit was later dismissed without prejudice as to it. The guardian in his settlement claimed that he had made certain investments for the benefit of his ward for which he was entitled to credit; that he had purchased a farm for $1,400.00, and had taken title in her name; that he had borrowed from her estate $2,000.00 at one time and $600.00 at another, for which he had executed mortgages on certain real estate; that these were good investments and he should have credit therefor. Other loans were also set up.

The court disregarded these pleas and rendered judgment against him for the amount that came to his hands as such guardian, subject to certain credits allowed him, and further adjudged a lien in favor of the ward on the real estate mentioned and directed a sale thereof, which was had. The sum of $3,115.15 was realized at this sale, and it was credited on the judgment, leaving a balance of $————. In the meantime T. G. Cole had collected the other assets of the ward and invested them in a venture of his own, in which all was lost. An execution issued against him for the balance of the judgment mentioned above, and same was returned "no property found."

Thereupon the guardian instituted this action against the surety, the National Surety Company, and sought to recover from it the balance of the judgment. It answered, alleging collusion between the present guardian and its principal, by which the latter failed to defend the original action, and fraudulently permitted a judgment to go against him for the full amount without presenting his rightful claims. It alleged that the investments above referred to were *bona fide* and good, and should have been allowed him as credits in his settlement.

Subsequent to this it filed an amended answer in which it set out the fact that the present guardian had filed exceptions in the county court to the former guardian's settlement; that those exceptions had been overruled and no appeal taken; that that remedy was exclusive, and it pleaded such action in abatement.

Allegations in avoidance of this were tendered in the reply and on issue joined the court heard proof and overruled the plea in abatement, and no question is made as to the propriety of that ruling. The court on its own motion referred the case to the master commissioner to take proof and report upon the issues raised by the pleadings and make a report of the settlement of the former guardian, which was done.

Appellant filed exceptions to this report and offered to file a second amended answer, making the purchasers of the lands which were sold at decretal sale under the judgment above described parties defendant and seeking to cancel those conveyances and to have it adjudged that such were proper investments upon the part of the guardian under section 4706, Kentucky Statutes. This was approximately twelve months subsequent to the filing of the original answer, and the court overruled the motion to file this pleading. Section 4706 reads as follows:

"That it shall be lawful for persons or corporations holding funds in a fiduciary capacity for loan or investment, to invest the same in real estate, mortgage notes or bonds, or in such other interest bearing or dividend paying securities as are regarded by prudent business men as safe investments, and to make loans with such securities as collateral; but such funds shall not be invested in the bonds or securities of any railroad or other corporation unless such railroad or other corporation has been in operation more than ten years, and during that time has not defaulted in the payment of principal or interest on its bonded debt, or be invested in the bonds of a county, district, town or city, that within ten years has defaulted in the payment of interest or principal on its bonded debt; and a fiduciary shall account for all interest or profit received; provided, however, that it shall be lawful for persons or corporations holding funds in a fiduciary capacity for loan or investment to invest same in securities authorized by an act of congress entitled 'the federal farm loan act,' as approved July 17, 1916, and known as 'federal farm loan bonds' (Dec. 23, 1892,

c. 122, page 416, section 1, as amended March, 1918, c. 141, page 596.)''

Under the provisions of this statute the guardian may, with the direction of the circuit court, invest the funds of his ward in real estate, where it appears to be a safe investment or reasonably necessary for her maintenance. Ex Parte Allnut, 194 Ky. 312.

It is unnecessary for us to decide whether a reasonably safe and prudent investment of this character *bona fide* made by the guardian alone is authorized by the statutes. It is sufficient to say that under the proof we do not think that these expenditures were that character of investment. The tract of land is variously estimated as containing from 60 to 150 acres. It consists of rough, steep mountain land, from which the minerals had been sold and which was of very little value for agriculture. It is located twelve miles from the county seat. At the time it was purchased it had on it a small frame house· upon which no insurance was carried by the guardian, and which was destroyed by fire before the sale. The farm brought $1,140.00.

As to his own indebtedness, of course he was himself responsible, and there being no evidence of fraud or collusion attending the sale, the amount realized from the property is evidence of the then value of the security, and this value is otherwise sustained by the weight of the evidence, though it may have advanced in price since. We do not think the court erred in overruling the motion to file second amended answer.

It is pleaded that the petition in the original suit to surcharge the guardian's settlement did not refer to these real estate transactions or set up a lien or ask a sale, and that there was no prayer to that effect, and therefore the court had no jurisdiction to enforce such lien, and the judgment ordering a sale is void, but it is not pleaded that the guardian's answer did not assert an affirmative defense, nor are any of the pleadings in that case set out in this. He did make these claims affirmatively in his settlement, and it is shown he took depositions in the former .suit, and there is an entire absence of evidence to show collusion between him and the plaintiff in that suit. Certainly the court had jurisdiction of the parties and the subject matter, and in a collateral attack every presumption will be indulged to uphold the validity of the judg-

ment, also the pleading will be construed most strongly against the pleader. If the answer in that case contained an affirmative defense under the prayer of general relief the court could grant the relief to which plaintiff manifested a right, and as this is not negatived, the fair presumption is that it did contain such defense and the judgment should be upheld.

It may have been erroneous, in that the petition did not describe the property, but this question could only be raised by the appellee in that action. It was not void and can not be attacked collaterally. Finally, it is argued that the judgment is so indefinite as to render it unenforceable. We cannot agree to this.

It adjudges the specific sum received by the guardian, and the date from which it shall begin to bear interest and the rate. It sets out the various sums used and loaned by him, giving date, amount and rate of interest chargeable thereon. It itemizes various credits allowed, giving dates and amounts, including the proceeds of the real estate and house furnishings received by the ward at her marriage. It provides for this to be computed biennially up to September 31, 1919, the date of the payment of the proceeds of the real estate under former judgment, and upon the balance until paid in the same manner.

We think this sufficiently definite to be followed by the clerk.

Judgment affirmed.